UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

WILLIAM GROVES,

    Plaintiff,

    v.                                                    Case No. 3:18-CV-979 JD

SOUTH BEND COMMUNITY SCHOOL
CORPORATION,

    Defendant.

**OPINION AND ORDER**

Plaintiff William Groves, a white male, filed this case alleging reverse race discrimination and retaliation after he lost out on two South Bend Community School Corporation administrative jobs to a black candidate. Defendant Board of School Trustees of the South Bend Community School Corporation ("SBCSC") has moved the Court for summary judgment on Mr. Groves's claims. Mr. Groves opposes SBCSC's motion and has requested the Court hold an oral argument on the motion before issuing a ruling. For the following reasons, the Court finds oral argument is unnecessary and grants SBCSC's motion for summary judgment.

## I.     Factual Background

William Groves is a white male who began working with the South Bend Community School Corporation in the 1991-1992 school year. He taught social studies at Clay High School, one of the high schools within the SBCSC umbrella, and served as head coach of the freshman football and freshman girls' basketball teams in that first year. (Ex. 8, Groves Dep. 24:11–14; DE 25-7 at 2.) He subsequently took on more advanced academic, administrative, and athletic positions over time, becoming dean of students at Clay in 2001 (Groves Dep. at 35:11–15, 36:3–

8), student management director at Clay in 2004, and then athletic director at Adams High School, another high school under the SBCSC umbrella, in 2007. (DE 25-7 at 2.) Mr. Groves was still serving as athletic director at Adams when the events that gave rise to this lawsuit began in 2017.

SBCSC was going to be losing its Corporation Director of Athletics ("CDA") at the end of the 2016-2017 school year and had started looking to hire a replacement. (Ex. 6, Seitz Dep. at 18:17–25; Ex. 8, Groves Dep. at 30:22–23.) The CDA was a Corporation-wide position charged with maintaining fiscal responsibility throughout the Corporation athletic programs, working to increase athletic participation, monitoring athletic policies and procedures, leading fundraising and marketing efforts, and working with the Indiana High School Athletic Association ("IHSAA"). (DE 30-5.) The 2017 job posting for the position listed only a bachelor's degree and a valid driver's license as required qualifications. (*Id.*)

Mr. Groves applied for the CDA job opening and was one of four candidates Kenneth Spells, the SBCSC superintendent in 2017, eventually interviewed. Dr. Spells is a black male and was the sole person responsible for interviewing and recommending candidates to the school board for the CDA position. (Ex. 25-2, Spells Dep. at 25:19–21.) Another candidate Dr. Spells interviewed was Seabe Gavin, a black male who had been an employee with SBCSC since 2002 and had worked as a substitute teacher, student manager, administrative assistant, in-school suspension coordinator, teacher, and coach during his time with the SBCSC. (Ex. 5, Gavin Dep. at 19, 21–25, 37.)

Mr. Gavin had a criminal history at the time he applied for the CDA position, having received two felony convictions in 1999. (DE 30-22; DE 30-23.) He had also previously been terminated both from an earlier job he had before coming to SBCSC and from a student manager

2

position he previously held at SBCSC. (DE 30-3; DE 30-4.) SBCSC ran two background checks on Mr. Gavin in 2002 and 2007, but neither one showed he had a criminal history. (DE 30-33.) SBCSC did not run any background checks on Mr. Gavin after 2007 despite having a written policy that background checks were to be run on candidates before hiring them for administrative positions. (DE 30-31.) Dr. Spells stated the lack of subsequent background checks on Mr. Gavin aligned with SBCSC's practice of not performing background checks on current SBCSC employees who were accepting new positions within the Corporation. (Ex. 10, Spells Dep. at 9:5–12.) Mr. Groves never reported any of his problematic criminal or employment history on his job applications and there is no evidence that anyone involved in any hiring process at issue in this case ever learned about Mr. Gavin's background. (Ex. 4, Spells Dep. at 17:11–23, 19:17–24; Ex. 5, Henderson Dep. at 17:17–21; DE 30-27.)

Dr. Spells interviewed Mr. Groves, Mr. Gavin, and two other candidates for the CDA position. He used the same set of questions in each interview. (Ex. 4, Spells Dep. at 54:11–22.) Dr. Spells eventually recommended that Mr. Gavin be chosen as the new CDA and Mr. Gavin received the CDA job based on that recommendation. (Ex. 4, Spells Dep. at 15:14–17, 28:17–20, 29:7–10.) Dr. Spells stated he chose Mr. Gavin over the other candidates because Mr. Gavin interviewed well, gave Dr. Spells the impression he could help ensure SBCSC had a good relationship with the IHSAA after a stretch of time where the relationship had been strained, gave good answers about helping students get into college, and was active and visible in the community. (Ex. 4, Spells Dep. at 29:9–30:2; 30:16–21, 31:13–32:3, 36:21–37:8.)

Dr. Spells stated he did not choose Mr. Groves in part because Mr. Groves interviewed poorly. Mr. Groves brought up money, his past firing of coaches as an athletic director, and his desire to have total control over SBCSC athletics if given the CDA job, none of which sat well

with Dr. Spells. (Ex. 4, Spells Dep. at 42:15–25, 46:15–47:10, 48:9–18; Ex. 8, Groves Dep. at 97:14–21.) Dr. Spells also cited Mr. Groves's past issues with IHSAA compliance and sloppy paperwork during his time as an athletic director as reasons he did not recommend Mr. Groves. (Ex. 4, Spells Dep. at 38:17–23, 42:15–25, 45:21–25, 48:9–18.) None of Mr. Groves's yearly SBCSC evaluations described IHSAA compliance issues or sloppy paperwork (DE 30-16; DE 30-17; DE 30-18; DE 30-19; DE 30-20; DE 30-21), but Mr. Groves admitted to the issues during his deposition. (Ex. 8, Groves Dep. at 81:15–19, 91:11–92:21.)

After finding out he did not receive the CDA job, Mr. Groves filed a Charge of Discrimination with the Equal Employment Opportunity Commission in November 2017 alleging the decision to hire Mr. Gavin was racially motivated. (DE 25-8.) The EEOC issued a dismissal and notice of rights in September 2018 (DE 25-8) and Mr. Groves then filed his original complaint with this Court in December 2018 (DE 1).

While this case was pending, Mr. Groves faced more employment issues at SBCSC. In March 2019, SBCSC announced that it was going to restructure by eliminating the CDA and individual high school athletic director positions in favor of a new, hybrid position of Dean of Students/Athletics at four of the SBCSC high schools. The idea to make the change was formed when Dr. Spells was still superintendent and was implemented when Todd Cummings, a new superintendent, took control. (Ex. 2, Spell Dep. at 5:9–11, 11:20–13:5, 52:7–12; Ex. 3, Cummings Dep. at 14:12–16:8.) SBCSC and Dr. Cummings cited cost saving as the driving force behind the restructuring. (Ex. 3, Cummings Dep. at 14:9–17, 15:24–16:8; DE 30-13.) The restructuring left both Mr. Groves and Mr. Gavin without jobs. SBCSC's plan was to allow any employees whose positions had been eliminated as part of the restructuring to apply for the new Dean of Students/Athletics positions. (DE 30-13.)

SBCSC put together a committee to interview the nine candidates who were selected to interview for the four new Dean of Students/Athletics positions. (Ex. 3, Cummings Dep. at 15:24–16:8; DE 25-4 at 15.) The principals of each of the four high schools who would be hiring someone for the role were on the committee along with a middle school principal. (Ex. 7, Henderson Dep. at 10:21–11:10; Ex 6, Seitz Dep. at 41:14–19; DE 25-4 at 14.) Both Mr. Groves and Mr. Gavin applied for the four positions and received offers to interview. (Ex. 6, Seitz Dep. at 42:22 to 43:8.)

Each high school principal was ultimately responsible for deciding who he would recommend to the board to fill the Dean of Students/Athletics position at his own school. The principal at Adams High School, Jim Seitz, recommended Robert Tull, a white male. The principal at Washington High School recommended Garland Hudson, a black male who had been the athletic director at Washington before the restructuring. The principal at Clay High School recommended Al Hartman, a white male who had been the athletic director at Clay before the restructuring. And the principal at Riley High School, Shawn Henderson, selected Mr. Gavin to serve as the interim Dean of Students/Athletics at Riley before later making Mr. Gavin's role permanent. (Ex. 6, Seitz Dep. at 39:8–10, 40:2–7; Ex. 8, Groves Dep. at 77:14–16; DE 25-9 at 6–7.)

Mr. Seitz said the main reason he did not offer Mr. Groves the Dean of Students/Athletics position at Adams, despite Mr. Groves previously serving as the school's athletic director, was Mr. Groves's lack of an administrative license. The lack of an administrative license was problematic because the person who held the new position at Adams would be required to evaluate teachers, and an administrative license was required to do those evaluations. (Ex. 6, Seitz Dep. at 51:19–52:16.) Mr. Tull, the candidate Mr. Seitz ended up recommending, had an

administrator's license. (Ex. 6, Seitz at 39:13–21, 52:7–8.) Additionally, while Mr. Seitz knew about Mr. Groves's CDA-related complaints against SBCSC at the time he made the Dean of Students/Athletics hiring recommendation, he stated that the complaints played no role in his decision. (Ex. 6, Seitz Dep. at 38:7–9.)

Mr. Henderson, the principal at Riley said he chose Mr. Gavin over the other candidates, because Mr. Gavin was the "right fit" for Riley. Mr. Henderson in particular liked Mr. Gavin's answers about the growth he wanted to implement in Riley athletics and Mr. Gavin's answers about ideas he had to focus on student involvement and achievement. (Ex. 7, Henderson Dep. at 24:22–25:13.) Mr. Henderson did not know about Mr. Groves's prior complaints against SBCSC at the time he made his hiring recommendation and stated that race did not play any role in the decision. (Ex.7, Henderson Dep. at 31:4–14.)

There is no evidence before the Court explaining why the principals at Clay and Washington High Schools decided to fill their new Dean of Students/Athletics positions with Mr. Hartman and Mr. Hudson, respectively. The only evidence before the Court is that both men held the athletic director positions at the respective schools before becoming Dean of Students/Athletics. (Ex. 8, Groves Dep. at 76:23–77:16; DE 25-9 at 5.)

After finding out he did not receive a Dean of Students/Athletics position, Mr. Groves filed a second Charge of Discrimination with the EEOC in August 2019. The EEOC issued a dismissal and notice of rights in September 2019 and Mr. Groves filed an amended complaint in this case that included allegations over the Dean of Students/Athletics hiring decision. (DE 14.) SBCSC has moved for summary judgment on all of Mr. Groves's claims. (DE 25.)

II.     **Standard of Review**

Summary judgment is proper when the movant shows that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" exists with respect to any material fact when "the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party." *Id*. Where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)).

In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in that party's favor. *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008); *King v. Preferred Tech. Grp.*, 166 F.3d 887, 890 (7th Cir. 1999). The non-moving party cannot simply rest on its pleadings but must present evidence sufficient to show the existence of each element of its case on which it will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

### III.    Discussion

Mr. Groves's amended complaint officially listed two claims, both of which alleged reverse discrimination. The first claim is based on SBCSC's decision not to hire him as its CDA in 2017 and the second claim is based on SBCSC's decision to eliminate his athletic director position and then not hire him as a Dean of Students/Athletics in 2019. While those are the only two claims specifically set out in the complaint, the complaint also contained an allegation that SBCSC's decision to eliminate Mr. Groves's athletic director position and not hire him as a Dean

7

of Students/Athletics was a retaliatory measure in response to his filing an EEOC complaint and this lawsuit after he lost out on the CDA position. (DE 14 ¶ 71.) Mr. Groves did not defend a potential retaliation claim in his response to SBCSC's motion for summary judgment though, which the Court determines means he waived any claim he had. The Court, however, for completeness, will still addresses the allegation in this order and explain why there is no evidence to support it. Before getting to any summary judgment analysis though, the Court first briefly addresses Mr. Groves's motion for oral argument (DE 31).

### A.     Motion for Oral Argument

Mr. Groves requested that the Court allow oral argument in this case because the case "involves complex issues of employment law including claims of employment discrimination and allegations of the employer's failure to follow their internal hiring policies." (DE 31.) Pursuant to Local Rule 7-5, the Court may "grant or deny a request for oral argument or evidentiary hearing in its discretion." N.D. Ind. L.R. 7-5(c)(1). While the Court respects that this case involves what Mr. Groves believes are complex issues of employment law, the Court has carefully reviewed the parties' briefing of the issues and believes that the briefing has sufficiently apprised the Court of the issues. Therefore, the Court denies Mr. Groves's motion for oral argument and moves to consider the merits of SBCSC's motion.

### B.     Mr. Groves's Discrimination Claims

Mr. Groves brought both of his discrimination claims under Title VII of the Civil Rights Act, which prohibits employment discrimination on the basis of race, color, religion, sex, or national origin. (DE 14 ¶ 60, 69); *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). When considering summary judgment on Title VII claims, a court asks whether the evidence would

permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the plaintiff's discharge or other adverse employment action. *Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 499 (7th Cir. 2017) (citing *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)).

When reviewing discrimination claims, the Court recognizes that the *McDonnell Douglas* framework analysis is no longer required and is now viewed simply as one way to organize and present a claim of discrimination. The Seventh Circuit has stated that plaintiffs do not have to "rely on the *McDonnell Douglas* method to carry that burden; she may well have other 'direct or circumstantial evidence that supports an inference of intentional discrimination.'" *Joll v. Valparaiso Cmty. Sch.*, 953 F.3d 923, 929 (7th Cir. 2020) (citation omitted). Instead, plaintiffs may point to "ambiguous or suggestive comments or conduct; better treatment of people similarly situated but for the protected characteristic; and dishonest employer justifications for disparate treatment." *Joll*, 953 F.3d at 929. And as the Seventh Circuit has recognized, "[f]ew discrimination cases are so straightforward—indeed they are often factually complex and require sifting through ambiguous pieces of evidence." *Ortiz*, 834 F.3d at 765.  With a Title VII claim, the "fundamental question at the summary judgment stage is simply whether a reasonable jury could find prohibited discrimination." *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 840 (7th Cir. 2014).

Because both SBCSC and Mr. Groves relied on the *McDonnell Douglas* framework in making their arguments (DE 26 at 13–22; DE 29 at 16–22), the Court will use the framework to address the parties' arguments. In using the framework, however, the Court will consider all of the evidence presented by the parties to decide whether summary judgment is warranted. *Ortiz*, 834 F.3d at 765–66 (holding "evidence must be considered as a whole, rather than asking

whether any particular piece of evidence proves the case by itself" but that the decision "does not concern *McDonnell Douglas* or any other burden-shifting framework").

The *McDonnell Douglas* framework analysis proceeds in three steps. First, the plaintiff carries the burden of establishing a prima facie case of discrimination. To make a prima facie case for reverse discrimination, a plaintiff must show: (1) background circumstances giving rise to an inference of discrimination; (2) that he applied for and was qualified for an open position; (3) that he was not hired for the position; and (4) that the employer filled the position with a person in a protected class. *See DeWeese v. DaimlerChrysler Corp.*, 120 F. Supp. 2d 735, 747 (S.D. Ind. 2000) (discussing requirements to make out a prima facie case of reverse discrimination); *see also Phelan v. City of Chicago*, 347 F.3d 679, 684 (7th Cir. 2003); *Mills v. Health Care Serv. Corp.*, 171 F.3d 450, 454 (7th Cir. 1999). While there is no precise definition of what qualifies as a "background circumstance" for purposes of the first requirement, the Seventh Circuit has held a plaintiff can meet the requirement by showing some reason or inclination by the employer to discriminate invidiously against whites, evidence that there is something "fishy" about the facts of the case at hand, that the person ultimately hired was clearly less qualified than the plaintiff, or that there was a pattern of hiring members of protected classes in the past. *Rayl v. Fort Wayne Cmty. Sch.*, 87 F. Supp. 2d 870, 883 (N.D. Ind. 2000) (citing *Mills*, 171 F.3d at 455–57.)

If the plaintiff can establish a prima facie case, there is a presumption of discrimination and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment decision. *McKinney v. Office of Sheriff of Whitley Cty.*, 866 F.3d 803, 807 (7th Cir. 2017) (quoting *McDonnell Douglas*, 411 U.S. at 802). If the employer can articulate a legitimate, nondiscriminatory reason, the burden then shifts back to the plaintiff to produce evidence that the

stated reason is mere pretext. *Id.* (quoting *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012)). Pretext "means a lie, specifically a phony reason for some action." *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1175 (7th Cir. 2002) (internal quotation omitted). In determining whether a stated reason is pretext, a court does not simply determine whether an employer properly evaluated competing applicants and must do more than find the decision was an unusual act or business error. *Id.* To rise to the level of pretext, there must be evidence that the proffered reasons were "deceit used to cover one's tracks." *Id.* It does not matter whether the reason is wise or even incorrect, only whether it is honest. *Milliman v. Cty. of McHenry*, 893 F.3d 422, 433 (7th Cir. 2018).

### 1.   *CDA Position*

Mr. Groves's first reverse discrimination claim stemming from SBCSC's selection of Mr. Gavin for the CDA position only requires the Court to conduct an analysis at step three of the *McDonnell Douglas* framework. SBCSC has conceded that Mr. Groves can make out a prima facie case of reverse discrimination given the discrepancy in on-paper qualifications between Mr. Groves and Mr. Gavin at the time of hiring. (DE 26 at 15.) And Mr. Groves has not disputed that SBCSC put forward legitimate, nondiscriminatory reasons for its choice of Mr. Gavin over Mr. Groves, he just argued they are pretextual. (DE 29.) The Court thus only considers whether Mr. Groves has offered evidence that could make a reasonable factfinder conclude that SBCSC's offered reasons are pretextual and meant to hide a racially discriminatory motive.

SBCSC's stated reasons for the choice of Mr. Gavin over Mr. Groves all came from Dr. Spells, the SBCSC superintendent who was solely in charge of interviewing and recommending CDA candidates. (Ex. 10, Spells Dep. at 15:10–17, 29:7–12). Dr. Spells said that he chose to recommend Mr. Gavin out of the four candidates he interviewed because he believed Mr. Gavin

interviewed very well, gave the impression he could help ensure SBCSC had a good relationship with the IHSAA after a stretch of time where SBCSC's relationship with the IHSAA had been strained, gave good answers about helping students get into college, and was active and visible in the community. (Ex. 4, Spells Dep. at 29:9–30:2; 30:16–21, 31:13–32:3, 36:21–37:8.) In contrast, Dr. Spells stated he did not recommend Mr. Groves because Mr. Groves raised salary concerns during his interview, bragged about firing coaches during his time as an athletic director, and stated he wanted total control over athletics if hired as the new CDA, all of which did not sit well with Dr. Spells. Dr. Spells also cited past IHSAA issues at Mr. Groves's high school while Mr. Groves was serving as athletic director and prior issues Mr. Groves had with SBCSC's human resources department involving sloppy paperwork as further reasons he did not recommend Mr. Groves for the role. (Ex. 4, Spells Dep. at 38:17–23, 42:15–25, 45:21–25, 48:9–18.)

The Court, after considering all of the presented evidence, cannot conclude that a reasonable factfinder could find those stated reasons were pretextual or that racial discrimination drove the hiring decision. First, Mr. Groves has presented no evidence at all, other than his own contentions, that shows or even suggests that race ever came up or played any role in the CDA hiring process. Second, Mr. Groves never disputed the evidence that Mr. Gavin had a good interview and gave the positive impression Dr. Spells stated he did, which bolsters SBCSC's stated reasons for the decision as non-pretextual. Third, while Mr. Groves challenged Dr. Spells's reasons for not hiring him by pointing to evidence that the reasons were never codified in yearly job evaluations (DE 29 at 22; DE 30-15; DE 30-16; DE 30-17; DE 30-18; DE 30-19; DE 30-20; DE 30-21), the overall evidence suggests the reasons were valid given Mr. Groves himself corroborated many of them during his deposition. For example, Mr. Groves admitted that

sports teams at Adams had issues with the IHSAA while he was serving as athletic director (Ex. 8, Groves Dep. at 81:15–19), that he had had issues with the SBCSC's human resources department over a lack of proper paperwork when he was hiring new coaches (Ex. 8, Groves Dep. at 91:11–92:21), and that he told Dr. Spells during his interview for the CDA position that he "thought the salary was low for what the market . . . brings" (Ex. 8, Groves Dep. at 97:14–21).

Finally, the only other evidence Mr. Groves has pointed to in support of pretext is the fact that his own on-paper qualifications were superior to Mr. Gavin's and the fact that SBCSC did not follow its written internal procedures when it did not conduct a background check on Mr. Gavin before hiring him as the new CDA. (DE 29 at 18–22.) The Court does not find that evidence is sufficient to convince a reasonable factfinder that SBCSC's stated reasons for the CDA hire were pretextual.

The Court starts with Mr. Groves's qualification-based argument. A difference in qualifications between two candidates can only be evidence of pretext in the extreme situation where the difference is so great that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question. *Millbrook*, 280 F.3d at 1180–81. The situation must be extreme in part because a factfinder's role "is to prevent unlawful hiring practices, not to act as a super personnel department that second-guesses employers' business judgments." *Id.* at 1181 (internal quotations omitted).

The available evidence here does not show such an extreme difference in qualifications. (DE 30-1; DE 34 at 5–6.) The only objective qualifications for the CDA position were a bachelor's degree and a driver's license, both of which Mr. Gavin and Mr. Groves possessed. (DE 29 at 5; Ex. 4, Spells Dep. at 25:5–9, 19–21.) Additionally, while Mr. Groves had many years of relevant experience, Mr. Gavin also had relevant experience after having been employed

with SBCSC in various capacities since 2002, having coached a season of football and several

seasons of softball, (Ex. 5, Gavin Dep. at 38:1–11, 38:22–39:12), and having had training and

testing on IHSAA rules (Ex. 2, Gavin Dep. at 48:20–49:14). Both Mr. Gavin and Mr. Groves

thus met the objective qualifications and had relevant experience. It is not the Court's or a

factfinder's role to further parse qualifications and second-guess SBCSC's ultimate choice of

Mr. Gavin under these circumstances where both men appeared objectively qualified for the

position. *See Millbrook*, 280 F.3d at 1180–81. That is particularly true given the undisputed

evidence that Mr. Groves had prior issues with the IHSAA and SBCSC human resources during

his time as an athletic director and gave a poor interview, all of which lessened Dr. Spells's view

of Mr. Groves's qualifications for the position. (Ex. 4, Spells Dep. at 30:16–18, 31:13–14,

31:23–32:3) *See Blise v. Antaramian*, 409 F.3d 861, 868 (7th Cir. 2005) (recognizing subjective

evaluations of a job applicant are often critical to the decision-making process).  Therefore, the

Court cannot conclude that a reasonable factfinder presented with the available evidence could

find that there was such a difference in qualifications between Mr. Groves and Mr. Gavin to

suggest that SBCSC's reasons for hiring Mr. Gavin instead of Mr. Groves were pretextual.

The Court next moves to Mr. Gavin's argument that evidence of SBCSC's failure to

follow its internal hiring procedures is enough to suggest pretext. (DE 29 at 19–22.) SBCSC had

an internal policy that required background checks for candidates like Mr. Gavin (DE 30-31),

and SBCSC has not contested that it did not perform a background check on Mr. Gavin as part of

the CDA hiring process (DE 34 at 4–5). But these facts do Mr. Groves little good because he has

failed to present any evidence outside of his own contentions that shows SBCSC's failure to

conduct a background check was meant to hide Mr. Gavin's troubling background, Dr. Spells

was lying about his reasons, or that SBCSC had a racially discriminatory motive. Instead, the

evidence suggests the failure was rooted solely in SBCSC's established practice of not performing background checks when hiring candidates who were already in the SBCSC system and presumably, like Mr. Gavin, had already been subject to background checks. (Ex. 10, Spells Dep. at 9:5–12; DE 30-33.)

While courts have held that an employer's failure to follow its own internal employment procedures can constitute evidence of pretext, they have done so when the plaintiff can show a connection between the failure to follow the procedures and an employment decision based on someone's protected status under Title VII. *See Giacoletto v. Amax Zinc Co., Inc.*, 954 F.2d 424, 427 (7th Cir. 1992) (holding failure to follow internal policies was evidence of pretext where the plaintiff "tied the employment decision to a consideration of age"). Mr. Groves has not presented any evidence tying SBCSC's hiring decision to race, connecting the failure to run a background check to discriminatory motives, or showing Dr. Spells lied about his decision-making. Because of that, the Court cannot find that a reasonable factfinder could conclude, based on the available evidence, that SBCSC's failure to follow its internal hiring policy regarding background checks constitutes evidence that its stated reasons for hiring Mr. Gavin instead of Mr. Groves were pretextual.

Having found that Mr. Groves did not meet his burden at the third step of the *McDonnell Douglas* framework, the Court concludes summary judgment in favor of SBCSC on Mr. Groves's CDA racial discrimination claim is appropriate. While Mr. Groves's presents no other evidence or argument to demonstrate a racial motive aside from pretext, which is linked to the *McDonnell Douglas* framework, the Court, for completeness also notes that it would reach the same conclusion it reached above even if it analyzed Mr. Groves's claim outside the *McDonnell Douglas* framework. Viewing all of the evidence that has been presented, *see Ortiz*, 834 F.3d at

766, the Court can find no evidence, direct or circumstantial, that suggests race played any role in SBCSC's decision to hire Mr. Gavin instead of Mr. Groves. It also can find no evidence that would suggest that the non-discriminatory reasons SBCSC gave for hiring Mr. Gavin instead of Mr. Groves were not truly believed, based in fact, and appropriate bases for such a decision. Thus, the Court cannot conclude a reasonable factfinder could find SBCSC's CDA hiring decision was racially discriminatory and finds, based on all of the evidence, that summary judgment in favor of SBCSC is appropriate.

### 2.     *Dean of Students/Athletics Position*

The Court next turns to Mr. Groves's second racial discrimination claim rooted in SBCSC's choice not to hire him as a Dean of Students/Athletics after eliminating his athletic director position. In his amended complaint, Mr. Groves framed the racial discrimination as manifesting itself in SBCSC's eliminating of his athletic director position at Adams High School and then failing to hire him as a Dean of Students/Athletics "at any high school in SBCSC." (DE 14 ¶ 71.) But in his response to SBCSC's motion for summary judgment, Mr. Groves only defended his discrimination claim with respect to his not receiving the Dean of Students/Athletics position at Riley High School, the job that went to Mr. Gavin. He did not argue or present evidence that his failure to receive a position at any of the other three high schools was discriminatory. (DE 29 at 17–22.) Mr. Groves's failure to present any argument or evidence defending his initial claim that his not being hired at Adams, Clay, or Washington was also racially discriminatory means he has waived any claim with respect to those hiring decisions. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 788 (7th Cir. 2008) (plaintiff failed to defend her claim at summary judgment stage and therefore abandoned it); *see also Keck Garrett & Assocs., Inc. v. Nextel Commc'ns, Inc.*, 517 F.3d 476, 487 (7th Cir. 2008). Thus, the Court

16

only analyzes Mr. Groves's claim related to his failure to be hired into the Dean of Students/Athletics position at Riley.

Before determining whether Mr. Groves has shown evidence of racially motivated hiring practices for the Dean of Students/Athletics position, the Court first analyzes whether Mr. Groves has shown any evidence that, as he claimed, the decision to eliminate his athletic director position that then caused him to apply for the Dean of Students/Athletics positions was racially motivated. (DE 14 ¶ 71.) In short, he has not. The evidence before the Court shows the elimination of Mr. Groves's athletic director position was part of an SBCSC-wide restructuring process. The two superintendents involved in the restructuring, Dr. Spells and Dr. Cummings, clearly stated the restructuring decision was financially motivated and never mentioned race as a factor. (Ex. 3, Cummings Dep. at 14:9–17, 15:24–16:8; Ex. 4, Spells Dep. 11:20–13:5.) Mr. Groves never disputed the financial motivation and never provided the Court with any evidence to suggest race played any role. (DE 29; Ex. 8, Groves Dep. at 74:22–75:6.) Further undermining Mr. Groves's allegation is the fact that of the four athletic director positions that were eliminated, three had been held by white candidates and one had been held by a black candidate (Ex. 8, Groves Dep. at 77:15–16). That suggests Mr. Groves was not treated less fairly than other similarly situated individuals. Without any evidence to suggest race motivated SBCSC's decision to eliminate Mr. Groves's athletic director position, the Court finds Mr. Groves's allegation to that effect cannot survive summary judgment.

The Court next moves to consider whether the evidence presented about the Riley Dean of Students/Athletics hiring decision could lead a reasonable factfinder to conclude there were improper racial motives behind the decision. The Court once again uses the *McDonnell Douglas*

17

framework to structure its analysis but considers all of the available evidence in that analysis as made clear in *Ortiz*. 834 F.3d at 765.

There was some dispute between the parties as to whether Mr. Groves could make out a prima facie case of reverse discrimination in relation to the Riley Dean of Students/Athletics hiring decision. The dispute between the parties stemmed from whether Mr. Groves's prior experience made him so much more qualified for the position than Mr. Gavin that a reasonable factfinder could conclude there were suspicious circumstances behind the hiring decision that would create an inference of discrimination. (DE 26 at 20; 29 at 18–19); *See Mills*, 171 F.3d at 455, 457 (recognizing being passed over despite superior qualifications can count as a background circumstance for making a prima facie case of reverse discrimination). The Court need not make a final determination as to that question, however, because even if it finds that Mr. Groves could make out a prima facie case, it cannot find, based on the second and third steps of the *McDonnell Douglas* framework, that Mr. Groves can survive summary judgment on the claim.

Moving to the second step of the *McDonnell Douglas* framework, the Court notes it is undisputed that SBCSC has offered several non-discriminatory reasons for its decision to hire Mr. Gavin at Riley. Mr. Henderson, the Riley principal who was on the interview committee for the Dean of Students/Athletics candidates, was the sole person in charge of making the hiring recommendation to the SBCSC board for the Riley position. (Ex. 7, Henderson Dep. at 31:4–8.) He stated that his decision to recommend Mr. Gavin over Mr. Groves and several other candidates was not based on race but instead on his sense that it "felt like Mr. Gavin was the right fit" for Riley given Mr. Gavin's interview responses about building relationships with students, helping students to achieve at higher levels, and helping to grow Riley's athletic

programs. Mr. Henderson also stated that Mr. Gavin's vision aligned well with the way he wanted to lead the school. (Ex. 7, Henderson Dep. at 12:3–8, 16:8–12, 24:22–26:8, 31:4–18.) Because SBCSC has presented these non-discriminatory reasons for the choice, it falls to Mr. Groves to present evidence that suggests the reasons are pretextual. *See Scruggs v. Garst Seed Co.*, 587 F.3d 832, 838 (7th Cir. 2009) (finding that selecting a candidate for a position because the candidate is believed to be better qualified is a legitimate, non-discriminatory reason).

Once again considering all of the evidence before it, the Court cannot find Mr. Groves has pointed to evidence that would allow a reasonable factfinder to conclude the reasons were pretextual or that racial discrimination was a factor in the Riley choice. Mr. Groves has presented no evidence to suggest Mr. Henderson's reasons for hiring Mr. Gavin were untrue or that Mr. Henderson did not genuinely believe that Mr. Gavin was the right fit for Riley. He also once again presented no evidence, outside his own contentions, that race played any role in the decision. Instead, he fell back on the same arguments he raised with his CDA discrimination claim, namely that circumstantial evidence in the form of his far superior credentials and SBCSC's failure to properly vet Mr. Gavin could convince a factfinder that the stated reasons were pretextual. (DE 29 at 18–22.) As was true for the CDA claim, the Court cannot find that is enough.

First, Mr. Groves has once again failed to present evidence showing the difference in the candidates' overall qualifications was so extremely lopsided as to suggest pretext. *See Millbrook*, 280 F.3d at 1180–81. The evidence shows that both Mr. Gavin and Mr. Groves met the minimum requirements for the Dean of Students/Athletics position because they both held bachelor's degrees. (DE 30-14.) The evidence also shows that Mr. Gavin was again objectively qualified for the position given his prior experience including, importantly, his two years of experience as the

SBCSC CDA that Mr. Groves did not have. (Ex. 5, Gavin Dep. at 87:4–7.) Finally, Mr. Groves has offered no evidence to suggest that Mr. Henderson did not truly believe Mr. Gavin's interview responses about building relationships with students, helping them achieve, and helping to grow the school's athletic programs made Mr. Gavin a better choice for the position than Mr. Groves and the other candidates. (Ex. 7, Henderson Dep. at 12:3–8, 16:8–12, 24:22–26:8, 31:4–18.) Based on that evidence, the Court cannot conclude that a reasonable factfinder could view the difference in qualifications between Mr. Gavin and Mr. Groves as being so skewed as to suggest pretext. *See Blise,* 409 F.3d at 868 (recognizing subjective reasons can be important in assessing who is best qualified for a position).

Further, while SBCSC again did not conduct a background check on Mr. Gavin before hiring him into the Riley Dean of Students/Athletics position, Mr. Groves again failed to connect that failure to any discriminatory motive or basis for finding pretext. As was true when analyzing the CDA claim, the evidence shows the failure was tied to SBCSC's established practice of not performing background checks when hiring candidates like Mr. Gavin who were already in the SBCSC system. (Ex. 10, Spells Dep. at 9:5–12.) There has been no evidence presented that shows SBCSC or Mr. Henderson knew about Mr. Gavin's criminal convictions or his prior termination from an SBCSC job and no evidence that the lack of a background check was meant to hide Mr. Gavin's background or was tied to racial discrimination. The Court thus cannot conclude a reasonable factfinder could find evidence of pretext or a racially discriminatory motive based on that evidence and finds Mr. Groves failed to meet his burden at the third step of the *McDonnell Douglas* framework.

Having found Mr. Groves failed to meet his burden under the *McDonnell Douglas* framework, the Court finds summary judgment on Mr. Groves's claim appropriate. As was true

20

for his CDA claim, Mr. Groves again presented no other evidence or argument in defense of his Dean of Students/Athletics-based racial discrimination claim other than pretext. His reliance on pretext suggests his arguments were best analyzed within the *McDonnell Douglas* framework. However, the Court notes that even if it had analyzed his claim outside the *McDonnell Douglas* framework, it would have reached the same conclusion. Viewing all of the evidence that has been presented, *see Ortiz*, 834 F.3d at 766, the Court finds Mr. Groves has pointed to nothing, other than his own contentions and beliefs, that suggests a racial motive behind the decision to hire Mr. Gavin as Riley's Dean of Students/Athletics or suggests that Mr. Henderson's reasons for choosing Mr. Gavin, which SBCSC adopted, were false or based on improper considerations. Without that evidence, a reasonable factfinder could not find SBCSC racially discriminated against Mr. Groves.

### D.      Mr. Groves's Retaliation Claim

Having analyzed Mr. Groves's discrimination claims, the Court finally turns to Mr. Groves's claim that SBCSC's decision to eliminate his athletic director position and then not hire him for a new Dean of Students/Athletics position constituted unlawful retaliation. While Mr. Groves did not list a separate retaliation claim in his amended complaint, he implied retaliation occurred. (DE 14 ¶ 71.) However, Mr. Groves presented no evidence or argument on retaliation, other than a brief mention that he believes he was retaliated against, in his response to SBCSC's motion for summary judgment (DE 25 ¶ 2; DE 29.) The Court thus views any retaliation claim Mr. Groves originally meant to make as abandoned at this summary judgment stage. *See Maclin*, 520 at 788; *Keck*, 517 F.3d at 487. Nevertheless, the Court goes on to explain why even if Mr. Groves had offered argument on his retaliation claim, summary judgment would still be appropriate based on the evidence before the Court.

In addition to prohibiting employers from discriminating on the basis of race, Title VII also prohibits employers from retaliating against employees who engage in protected activities, such as reporting or opposing unlawful employer behavior. § 2000e–3(a). To sustain a retaliation claim, Mr. Groves must show that (1) he engaged in an activity protected by statute; (2) he suffered an adverse employment action; and (3) that there was a causal link between the protected activity and the adverse action. *See Vesey v. Envoy Air, Inc.*, 999 F.3d 456, 461 (7th Cir. 2021). Retaliation cases, like discrimination cases, require the Court to consider all of the record. *See Ortiz*, 834 F.3d at 765; *see also Lauth v. Covance, Inc.*, 863 F.3d 708, 716 (7th Cir. 2017). The ultimate question at the summary judgment stage is whether a reasonable trier of fact could infer retaliation. *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 564 (7th Cir. 2015).

The only question to resolve on Mr. Groves's retaliation claim is whether the evidence could support a causal link between Mr. Groves's protected activity of filing his initial complaints after losing out on the CDA position and SBCSC's decision to eliminate his athletic director job and not hire him as a Dean of Students/Athletics. (DE 26 at 22.) The available evidence does not suggest a causal connection.

The Court starts with whether a reasonable factfinder could view SBCSC's decision to eliminate Mr. Groves's athletic director job as retaliatory. The only evidence before the Court that suggests a retaliatory motive is Mr. Groves's own statement that he is "absolutely positive" that he was retaliated against. (Ex. 8, Groves Dep. at 107:13–14.) That is not enough. *See Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014) (holding a plaintiff's unsupported inferences do not defeat summary judgment). It also does not fit with unrebutted evidence in the form of statements from Dr. Cummings, the superintendent who implemented the restructuring, that the restructuring was done as a cost-saving measure while SBCSC was dealing

with budgetary and other financial issues. (Ex. 3, Cummings Dep. at 14:12–16:8.) Additionally, any allegation that SBCSC carried out the restructuring to retaliate against Mr. Groves specifically is further undermined by evidence showing the restructuring impacted the three other SBCSC high school athletic directors and Mr. Gavin, the CDA, in the same way it impacted Mr. Groves. Based on that evidence, the Court cannot conclude a reasonable factfinder could find the restructuring was a retaliatory measure against Mr. Groves.

The Court next moves to consider whether a reasonable factfinder could view the failure to hire Mr. Groves into one of the four Dean of Students/Athletics positions after the restructuring as unlawful retaliation. The Court here reiterates that the decisions about which candidate to hire for each Dean of Students/Athletics position fell to the principals of the respective high schools. (Ex. 7, Henderson Dep. at 12:3–8, 31:4–18, Ex. 6, Seitz Dep. at 39:8– 10, 40:2–41:10.) Of the four open Dean of Students/Athletics positions, two, the Washington and Clay positions, went to candidates who had previously served as those schools' athletic directors. (Ex. 5, Gavin Dep. at 60:23–24, 61:4–8.) Mr. Groves never challenged those hiring decisions, argued they were retaliatory in nature, or presented any evidence to show the principals at Washington and Clay who made the decisions even knew about his EEOC complaint and lawsuit.

That leaves the Dean of Students/Athletics positions at Adams, where Mr. Groves had previously served as athletic director, and Riley, where Mr. Gavin was hired. The available evidence does not show retaliation was a factor in either hiring decision. Mr. Seitz, the Adams principal, denied that his knowledge of Mr. Groves's prior CDA-related complaints played any role in his decision-making (Ex. 6, Seitz Dep. at 38:3–9) and said he decided against Mr. Groves because Mr. Groves lacked an administrative license (Ex. 6, Seitz Dep. at 50:21–52:13). Mr.

Groves never disputed that reasoning or presented evidence to show Mr. Seitz acted with retaliatory intent. Mr. Henderson, the Riley principal, stated he did not even know about Mr. Groves's prior complaints at the time he was making his hiring decision, (Ex. 7, Henderson Dep. at 31:4–8), something Mr. Groves also never disputed. Because of that, it was legally impossible for Mr. Henderson to have retaliated. *Hamer v. Neighborhood Housing Servs. of Chicago*, 897 F.3d 835, 841 (7th Cir. 2018) ("To retaliate against a complainant, decisionmakers must be aware of the complaint"). Thus, the Court finds that there is no evidence to support a retaliation claim and that summary judgment for SBCSC is warranted.

IV.     **Conclusion**

For the foregoing reasons, the Court DENIES Plaintiff William Groves's motion for oral argument (DE 31) and GRANTS Defendant Board of School Trustees of the South Bend Community School Corporation's motion for summary judgment (DE 25). The Clerk is DIRECTED to enter judgment in favor of the Defendant.

SO ORDERED.

ENTERED: November 19, 2021

_____/s/ JON E. DEGUILIO_____
Chief Judge
United States District Court

24